## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ELIAJAH YERENA** | § | |
|     *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-cv-35** |
| | § | |
| **JEFFREY NEWHOUSE,** | § | |
| **ARIEL OSORIO,** | § | |
| **CLAYTON MYTYCH,** | § | |
| **DENNIS SPEARS,** | § | |
| **and CITY OF DALLAS,** | § | |
|     *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Eliajah Yerena, Plaintiff, complaining of Jeffrey Newhouse, Ariel Osorio, Clayton Mytych, Dennis Spears, and the City of Dallas, and for cause of action will respectfully show unto the Court as follows:

## SUMMARY

On July 11, 2018, Dallas Police Officers Jeffery Newhouse, Ariel Osorio, Clayton Mytych, and Dennis Spears approached a tent at a homeless camp while responding to an unrelated call. The officers did not know who was inside the tent and had no reason to contact the occupants of the tent. Without announcing their presence, and while Officers Osorio, Mytych, and Spears stood by and watched, Defendant Newhouse removed his pepper spray, inserted it into an open flap, and sprayed a cloud of pepper spray into the tent. The pepper spray filled the small confines of the tent quickly causing injuries to the Plaintiff Eliajah Yerena's eyes, lungs, and skin. The officers then arrested Mr. Yerena, and, in an effort to cover up their wrongful actions, completely omitted Defendant Newhouse's use of pepper spray from their report.

# I.
# PARTIES

1.      Plaintiff Eliajah Yerena is a resident of Dallas County.

2.      Defendant Jeffrey Newhouse, is an individual residing in Dallas County, Texas and is a police officer with the City of Dallas Police Department and may be served at his place of employment at the Dallas Police Department located at 6969 McCallum Blvd. Dallas, Texas 75252 or wherever he may be found.

3.      Defendant Ariel Osorio, is an individual residing in Dallas County, Texas and is a police officer with the City of Dallas Police Department and may be served at his place of employment at the Dallas Police Department located at 6969 McCallum Blvd. Dallas, Texas 75252 or wherever he may be found.

4.      Defendant Clayton Mytych, is an individual residing in Dallas County, Texas and is a police officer with the City of Dallas Police Department and may be served at his place of employment at the Dallas Police Department located at 6969 McCallum Blvd. Dallas, Texas 75252 or wherever he may be found.

5.      Defendant Dennis Spears, is an individual residing in Dallas County, Texas and is a police officer with the City of Dallas Police Department and may be served at his place of employment at the Dallas Police Department located at 6969 McCallum Blvd. Dallas, Texas 75252 or wherever he may be found.

6.      Defendant City of Dallas is a political subdivision of the State of Texas and may be served through the Dallas City Manager, T.C. Broadnax, located at 1500 Marilla St., Dallas, Texas 75201 or wherever he may be found.

**II.**
**JURISDICTION AND VENUE**

7.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391 because the Defendants are domiciled and/or reside in the Northern District of Texas, and all or a substantial part of the cause of action accrued in the Northern District.

**III.**
**FACTS AND ALLEGATIONS**

8.      On the morning of July 11, 2018, Eliajah Yerena was in his tent at a homeless camp near 1300 LBJ Freeway in Dallas County, Texas.

9.      His friend Jerry O'Neil was also in the tent.

10.     Mr. Yerena woke up early to get ready for a job he had heard about involving tile work.

11.     Defendants Jeffrey Newhouse, Dennis Spears, Ariel Osorio, and Clayton Mytych were walking through a field on a call that did not relate to Mr. Yerena.

12.     Prior to July 11, 2018, the City of Dallas had not required Defendant Newhouse to be adequately trained on the appropriate uses of his department issued pepper spray.

13.     Defendant Newhouse began working for the City of Dallas Police Department on September 22, 2006.

14.     The first time Defendant Newhouse attended the Less Lethal Chemical Weapons Training was on August 9, 2019 – over a year **after** the incident that makes the basis of this lawsuit.

15.     Defendants Newhouse, Spears, Osorio, and Mytych approached Mr. Yerena's tent from the side.

16.     Defendants Newhouse, Spears, Osorio, and Mytych were not aware of Mr. Yerena when they approached the tent.

17.     Thankfully, the interaction between Defendants and Mr. Yerena was captured on a police body camera.[1]

18.     Mr. Yerena could not and did not see the Defendants approach his tent.

19.     Defendants Newhouse, Spears, Osorio, and Mytych did not announce that they were police officers as they approached the tent.

20.     Defendants Newhouse, Spears, Osorio, and Mytych did not say anything to alert Mr. Yerena, or any occupants of the tent, that they were outside of the tent.

21.     Defendants Newhouse, Spears, Osorio, and Mytych did not give Mr. Yerena any instructions to come out of his tent.

22.     Defendants Newhouse, Spears, Osorio, and Mytych did not give Mr. Yerena any instructions prior to making contact with Mr. Yerena.

23.     Defendants Newhouse, Spears, Osorio, and Mytych did not know who was inside of the tent when they approached.

24.     Mr. Yerena could not see the Defendants as they stood together next to his tent.

25.     The Defendants had not received a call regarding Mr. Yerena or Mr. O'Neil and were not investigating either Mr. Yerena, Mr. O'Neil, or the tent where they were located.

---

[1] The body camera footage is attached as Exhibit A and fully incorporated herein.

26.     The Defendants had not seen Mr. Yerena or Mr. O'Neil commit a crime.

27.     As the Defendants had not even seen Mr. Yerena or Mr. O'Neil, they had not seen them do anything that would even give reasonable suspicion of a crime.

28.     The Defendants did not have probable cause to believe a crime had been or was being committed by Mr. Yerena or Mr. O'Neil.

29.     Defendant Newhouse stood next to Mr. Yerena's tent.

30.     Defendants Spears, Osorio, and Mytych stood within feet of Defendant Newhouse outside of Mr. Yerena's tent.

31.     The front of the tent was unzipped, but the tent door was closed.

32.     Defendant Newhouse removed his pepper spray from his belt.

33.     Defendants Spears, Osorio, and Mytych observed Defendant Newhouse remove his pepper spray from his belt.

34.     Defendants Spears, Osorio, and Mytych were only a couple of feet away from Defendant Newhouse when they observed him removed his pepper spray from his belt.



35.     Defendant Newhouse then extended his hand which was holding the pepper spray toward the open flap of the tent.

36.     Defendants Spears, Osorio, and Mytych observed Defendant Newhouse extend his hand which was holding the pepper spray toward the open flap of the tent.

37.     Defendants Spears, Osorio, and Mytych were only a couple of feet away from Defendant Newhouse when they observed him extend his hand which was holding the pepper spray toward the open flap of the tent.

38.     Defendants Spears, Osorio, and Mytych were aware that Defendant Newhouse was about to spray the pepper spray into the tent since they observed him remove the pepper spray from his belt and reach it toward the open flap of the tent.

39.     However, Defendants Spears, Osorio, and Mytych did nothing to intervene and instead stood by waiting and watching.



40.     Defendant Newhouse then sprayed the pepper spray into the tent.

41.     Defendants Spears, Osorio, and Mytych observed Defendant Newhouse spray the pepper spray into the tent.

42.     Defendants Spears, Osorio, and Mytych were only a couple of feet away from Defendant Newhouse when they observed him spray the pepper spray into the tent.

43.     After Defendant Newhouse sprayed the pepper spray into the tent, Defendant Osorio turned toward Defendant Mytych and smiled.



44.     Defendant Newhouse walked away as the pepper spray filled the inside of the tent.

45.     Inside of the tent, Mr. Yerena was still unaware that police officers were outside of the tent.

46.     Mr. Yerena heard a quick spray sound that lasted a couple of seconds.

47.     Mr. Yerena quickly realized it was pepper spray.

48.     The pepper spray created a cloud that filled the tent.

49.     The pepper spray immediately began to irritate Mr. Yerena's eyes causing them to burn.

50.     The pepper spray immediately filled Mr. Yerena's lungs as he breathed it in while trapped in the confined space of the tent. Breathing in the pepper spray caused his chest and lungs to burn and hurt.

51.     Mr. O'Neil was hit with the pepper spray on the right side of his face.

52.     Mr. Yerena and Mr. O'Neil thought someone in the camp was coming to steal their belongings since the officers did not identify themselves and had no reason to spray pepper spray into their tent.

53.     Mr. Yerena, in an effort to defend himself, Mr. O'Neil, and their property, picked up a shot gun and pointed it toward the door of the tent.

54.     Defendant Spears looked inside of the tent and saw the shotgun pointed at the door of the tent.

55.     This was when Mr. Yerena realized that the pepper spray was sprayed by the police.

56.     The Defendants yelled for the occupants of the tent to exit with their hands up in the air.

57.     Mr. O'Neil walked out of the tent and into the field where he was apprehended.

58.     Mr. Yerena complied with the Defendants' orders and and came out of the tent with his hands up.

59.     The Defendants then ordered Mr. Yerena to get on the ground.

60.     Mr. Yerena complied by laying on the ground where he was handcuffed with his hands behind his back by Defendant Newhouse.

61.     Mr. Yerena did not have a shirt on which allowed the pepper spray to more easily irritate the skin on his chest and back.

62.     During the arrest, Mr. Yerena injured his wrist.

63.     Medical officials in the jail believed he suffered nerve damage to his wrist due to the difficulty he endures when he grips or picks up objects.

64.     Mr. Yerena complained to the Defendants that he was laying in an ant pile and could clearly be seen to not have a shirt on; however, the Defendants refused to move Mr. Yerena from the ant pile.



65.     Mr. Yerena again told the Defendants, "I am in an ant pile man."

66.     The Defendants continued to refuse to move him and even responded with a laugh.

67.     Defendant Spears told Defendant Newhouse that Mr. Yerena pointed a shotgun at him, and Defendant Newhouse replied "Oh, you should have blew [*sic*] his face off."

68.     This is highly disturbing considering Mr. Yerena was simply protecting himself inside of his tent after Defendant Newhouse's unwarranted and unlawful assault by pepper spraying him.

69.     Mr. Yerena told the Defendants, "I didn't know who y'all were man."

70.     The reason Mr. Yerena didn't know who pepper sprayed him is because the Defendants did not identify themselves before Defendant Newhouse stuck his pepper spray into the tent and sprayed without reason, as Mr. Yerena and Mr. O'Neil had done nothing to justify being pepper sprayed.

71.     While waiting for his identification to come back, Mr. Yerena again told the Defendants that the ants were tearing him up, to which Defendant Newhouse responded that Mr. Yerena was lucky he was still alive.

72.     Due to the Defendants' refusal to move Mr. Yerena from the ant pile, the ants bit him all over his stomach and the sides of his chest, causing Mr. Yerena to suffer pain.

73.     Finally, one of the Defendants picks up Mr. Yerena from the ground after approximately twenty-five minutes of laying in the ant pile and complaining to the Defendants.

74.     The Defendants located another homeless individual while making contact with Mr. Yerena and Mr. O'Neil.

75.     This third individual was a Hispanic male named Mr. Beltran.

76.     After taking Mr. Beltran into custody, Defendant Newhouse told Mr. Beltran to "lay down on your face where you belong."

77.     Mr. O'Neil is a Caucasian male and was told to sit down on his backside.

78.     Mr. Yerena is a Hispanic male that was told to get on his chest and required to remain there for over twenty-five minutes while he was attacked by ants.

79.     The Defendants instructed the two Hispanic males to lay face down on the ground while the Caucasian male was instructed to sit on his backside.

80.     Defendant Osorio wrote an Affidavit for Arrest Warrant or Capias (hereinafter referred to as "Affidavit") and submitted that Affidavit to a judge for the determination of probable cause.

81.     In that Affidavit, Defendant Osorio completely omitted the fact that Defendant Newhouse pepper sprayed Mr. Yerena.

82.     Defendant Osorio also wrote an Incident Report associated with Mr. Yerena's arrest and completely omitted the fact that Defendant Newhouse pepper sprayed Mr. Yerena.

83.     The Defendants were at all times acting under the color of law.

### IV.
### CAUSES OF ACTION

### Count One
### Excessive Force – Defendant Newhouse
### (Fourth Amendment and 42 U.S.C § 1983)

84.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

85.     Acting under the color of law, Defendant Newhouse deprived Plaintiff of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the

United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force. Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

86.     The amount of force used by Defendant Newhouse against the Plaintiff as described above, specifically but not limited to, when Defendant Newhouse sprayed Plaintiff with pepper spray, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

87.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

88.     Mr. Yerena was not suspected of committing a felony offense when Defendant Newhouse sprayed him with pepper spray.

89.     Mr. Yerena was not threatening any officer or other person immediately prior to Defendant Newhouse spraying him with pepper spray.

90.     A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Mr. Yerena, who was not threatening any officer or other person, was not suspected of committing a crime, was not attempting to evade or resist arrest, and who the use of force was not warranted.

91.     A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Mr. Yerena, who was not threatening any officer or other person, was not suspected of committing a crime, was not attempting to evade or resist arrest, and who the use of force was not warranted.

92.     A reasonable officer in Defendant Newhouse's shoes would know that spraying a person with pepper spray who is just sitting inside of his tent is clearly unreasonable and excessive.

93.     As a direct result of the force used against him by Defendant Newhouse, Plaintiff has suffered physical injury, pain and mental anguish for which he sues herein.

94.     These injuries were not caused by any other means.

## Count Two
## Bystander Liability – Defendants Osorio, Spears, and Mytych
### (Fourth Amendment and 42 U.S.C. § 1983)

95.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

96.     In *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013), the Fifth Circuit stated that "an officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

97.     It is clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm. *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995); *Hamilton*, 845 F.3d at 663.

98.     Each of Defendants Osorio, Spears, and Mytych had a reasonable opportunity, had they been so inclined, to prevent Defendant Newhouse from violating Plaintiff's rights by spraying him with pepper spray without legal justification, but they failed to do so.

99.     Defendants Osorio, Spears, and Mytych failed to intervene to prevent Defendant Newhouse from using excessive force against Plaintiff.

100.    Defendants Osorio, Spears, and Mytych knew that Defendant Newhouse was about to violate Plaintiff's constitutional rights by pepper spraying him without legal justification when they saw Defendant Newhouse remove his pepper spray from his belt and reach it toward the open flap of the tent.

101.    Defendants Osorio, Spears, and Mytych had a reasonable opportunity to prevent the harm because they were standing only a few feet away from Defendant Newhouse and observed him remove his pepper spray and reach it toward the open flap in the tent before he sprayed the pepper spray into the tent. Defendants Osorio, Spears, and Mytych were close enough to Defendant Newhouse that they could have told him to stop and not to spray the pepper spray or even reach out and grab him. There was enough time from the point that Defendant Newhouse removed the pepper spray from his belt for Defendants Osorio, Spears, and Mytych to attempt to intervene.

102.    Defendants Osorio, Spears, and Mytych chose not to act. None of the Defendants told Defendant Newhouse to stop or attempted to intervene in any way even though there was time to stop Defendant Newhouse after he removed his pepper spray from his belt and they were close enough to do so.

103.    By unreasonably and intentionally failing to intervene, Defendants Osorio, Spears, and Mytych demonstrated a deliberate indifference to a substantial risk of serious harm to Plaintiff's constitutional rights.

104.    Defendants Osorio, Spears, and Mytych were aware that if they did not intervene and Defendant Newhouse was permitted to spray pepper spray into the tent, that whoever was in the tent would suffer injury.

105.    However, knowing that (1) there was no reason to spray pepper spray into the tent as a result of not even knowing who was in the tent, (2) that spraying the pepper spray into the tent would cause injury to whoever was inside of the tent, and (3) that this would constitute an excessive use of force and thus a violation of the constitutional rights of whoever was inside of the tent, Defendants Osorio, Spears, and Mytych made the conscious decision not to intervene to stop Defendant Newhouse from spraying pepper spray into the tent.

106.    This conscious decision not to intervene, given the knowledge Defendants Osorio, Spears, and Mytych had at the time, demonstrated deliberate indifference to a substantial risk of serious harm to Mr. Yerena's constitutional rights.

107.    As a result of this misconduct, Plaintiff sustained injuries, suffered physical pain and suffering, and suffered mental anguish.

## Count Three
## Failure to Train
### *Monell v. New York City Department of Social Services*
### (42 U.S.C § 1983)

108.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

109.    "It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 457 (5th Cir.2000) (subsequent appeal after remand of *Brown v. Bryan Cnty., Okla.*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626) (holding that a sheriff's failure to train a county deputy that resulted in constitutional violation could be county policy).

*110.*    Indeed, "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held

liable if it actually causes injury." *Id.* (quoting *City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989)*); *Oporto v. City of El Paso*, EP-10-CV-110, 2010 WL3503457, at *7 (W.D. Tex. Sept. 2, 2010).

111.    "Deliberate indifference is a key component of a failure to train claim, as a failure to train claim supports § 1983 liability 'only where the failure to train amounts to a deliberate indifference to the rights of the persons whom the [officers] come into contact.'" *Oporto*, 2010 WL 3503457, at *7 (quoting *City of Canton*, 489 U.S. at 388).

112.    "If, in light of the duties assigned to specific officers, the need for more or different training is so likely to result in the violation of constitutional rights, the policymakers of a city can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton*, 489 U.S. at 390).

113.    In order to establish the City's liability, the plaintiffs must show (1) inadequate training procedures; (2) that inadequate training caused the officers to pepper spray Mr. Yerena; and (3) the deliberate indifference of municipal policymakers. *Pineda v. City of Houston*, 291 F.3d 325, 331–32 (5th Cir. 2002).

114.    The inadequacy of training must be closely related to the injury. *Id.*

115.    City of Dallas had inadequate training procedures in that they did not require Defendant Newhouse to receive non-lethal chemical weapons training.

116.    The City of Dallas policymakers are the city council.

117.    The City of Dallas, by way of the city council, is responsible for the training of its police officers, specifically on the use of non-lethal chemical weapons that it issues said officers.

118.    The City of Dallas, by way of the city council, knowing Defendant Newhouse would be in situations where he may use his department issued pepper spray, did not

require Defendant Newhouse to complete a "Less Lethal Chemical Weapons" training until August 9, 2019 - over a year **after** the incident that forms the basis for this lawsuit.

119.    The inadequate training caused Defendant Newhouse to spray Mr. Yerena with pepper spray because he did not understand when was an appropriate situation which necessitated the spraying of his department issued pepper spray and when was not an appropriate situation which necessitated the spraying of his department issued pepper spray.

120.    If the City of Dallas, by way of the city council, would have properly trained Defendant Newhouse on the use of pepper spray, then Defendant Newhouse would have understood that it was inappropriate to spray his department issued pepper spray into Mr. Yerena's tent.

121.    The City of Dallas' lack of training directly resulted in the unreasonable pepper spraying of Mr. Yerena by Defendant Newhouse.

122.    This inadequate training was the result of the deliberate indifference by the City's policymakers – the city council.

123.    If in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need, then the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. *City of Canton*, 489 U.S. at 390.

124.    "For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with

firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390 n. 10.

125.    The City of Dallas, by way of the city council, has armed its officers with pepper spray.

126.    The City of Dallas employs officers that are required to make contact with citizens and homeless people.

127.    The City of Dallas, by way of the city council, is aware that the officers may use their pepper spray.

128.    However, the City of Dallas, by way of the city council, did not train its officers, specifically Defendant Newhouse, in the constitutional limitations on the use of force and pepper spray.

129.    Thus, the need to train its officers, specifically Defendant Newhouse, in the constitutional limitations on the use of force and pepper spray can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights. *City of Canton*, 489 U.S. at 390 n. 10.

130.    Mr. Yerenea's physical injuries, pain, and mental anguish resulted directly from the excessive use of force through being pepper sprayed by Defendant Newhouse, which was a direct result of the City of Dallas' deliberate indifference to the need for training Defendant Newhouse on the use of force and pepper spray.

## V.
## Qualified Immunity

131.    It is anticipated the Individual Defendants will attempt to raise a defense of qualified immunity.

132.    In cases involving claims of qualified immunity, often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

133.    However, a reply is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a] defendant's conduct at the time of the alleged acts." *Id*. at 1434.

134.    Additionally, if "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," the assertion of a qualified immunity defense cannot sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), overruled in part on other grounds by *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

135.    In *Darden v. City of Fort Worth*, the Fifth Circuit reiterated the elements of the qualified-immunity defense are as follows:

> The Supreme Court has mandated a two-step sequence for resolving government officials' qualified immunity claims. We must determine (1) "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right" and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. A right may be clearly established without a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful.

*Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (internal citations omitted).

136.    Acting under the color of law, Defendants Newhouse, Osorio, Spears, and Mytych deprived Mr. Yerena of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of deadly force.

137.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

138.    Mr. Yerena's injuries, including but not limited to burning and irritation of his eyes, lungs, and skin, were directly and proximately caused by Defendant Newhouse's use of excessive force and Defendants Spears, Osorio, and Mytych failing to intervene.

139.    A reasonable officer would know that this use of force, specifically, pepper spraying Mr. Yerena when there was no threat of harm due to Mr. Yerena simply sitting inside of his tent, is <u>clearly excessive</u> when Mr. Yerena was not an immediate threat to others or officers.

140.    A reasonable officer would know that this use of force, specifically, Pepper spraying Mr. Yerena when there was no threat of harm due to Mr. Yerena simply sitting inside of his tent, is <u>clearly unreasonable</u> when Mr. Yerena was not an immediate threat to others or officers.

141.    Plaintiff pleads that it was clearly established law, well before July 11, 2018, that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and to be free from unlawful excessive force.

142.    No reasonable law enforcement official would have acted as Defendants did under these circumstances, by peppery spraying Plaintiff without reason as Plaintiff had not threatened Defendants or given any reason to physically harm him and failing to intervene when Defendant Newhouse was about to pepper spray Plaintiff.

143.    The use of force and failure to intervene in that use of force were grossly excessive, unreasonable, and unwarranted. The Individual Defendants are not, therefore, entitled to the protection of qualified immunity for their actions.

144.    Thus, any request by Defendants Newhouse, Spears, Osorio, and Mytych for a Rule 7(a) reply should be denied.

## VI.
## Exemplary Damages

145.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

146.    When viewed objectively from the standpoint of the Individual Defendants, at the time of the occurrence, said Individual Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

147.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by the Individual Defendants, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VII.
## Damages

148.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

149.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendants' use of excessive and unreasonable force as well as the

failure to intervene to stop the use of excessive force against Plaintiff. As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends the Individual Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages.

150.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

        a.      Physical pain and suffering in the past;

        b.      Emotional distress, torment, and mental anguish in the past;

        c.      Medical Expenses, and

        d.      Legal Expenses.

151.    Pursuant to 42 U.S.C. § 1983 and 1988, and Texas Civil Practice & Remedies Code section 41.003(a), Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, and costs of court.

## VIII.
## Attorneys' Fees

152.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## IX.
## Jury Request

153.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/ *Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
Colorado Bar No. 46582
NILES ILLICH
Texas Bar No. 24069969

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
Niles@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF